FILED
United States Court of Appeals
Tenth Circuit

July 22, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GUSTAVO JUAREZ-GALVAN,

Plaintiff - Appellant,

v.

UNITED PARCEL SERVICE, INC.,

Defendant - Appellee.

No. 13-3118
(D.C. No. 5:10-CV-4145-RDR)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **MURPHY**, and **BACHARACH**, Circuit Judges.

---

Gustavo Juarez-Galvan sued his employer, United Parcel Service, Inc.

("UPS"), claiming he was denied a promotion to the position of full-time driver

because he is an immigrant from Mexico.[1]  *See* Title VII of the Civil Rights Act

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]Although Juarez-Galvan's summary judgment filings were not clear, the district court concluded the pretrial order set out a single claim of discrimination—failure to promote.  *Cf. Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint . . . .").  Juarez-Galvan's appellate briefing is similarly unclear.  Nevertheless, he has not challenged the district court's interpretation of the pretrial order.  *See Trujillo v.*

(continued...)

of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (making illegal, inter alia, the refusal to promote an individual because of that individual's "national origin"). Concluding Juarez-Galvan failed to come forward with direct evidence of discrimination or evidence creating an issue of material fact as to pretext, the district court granted summary judgment in favor of UPS. Juarez-Galvan appeals. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**.

Because the parties are familiar with the relevant facts, there is no need to set them out in this opinion.[2] This court reviews the grant of summary judgment in a Title VII case de novo. *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014). An employer is entitled to summary judgment only if "there is

---

[1](...continued)
*Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979) (holding a district court's interpretation of the pretrial order "may be reversed only if there is an abuse of discretion"). Thus, the only issue on appeal is whether the district court erred in concluding UPS was entitled to summary judgment on Juarez-Galvan's failure-to-promote claim. For that reason, this court expresses no opinion on whether the record in this case establishes a viable jury question as to retaliation or hostile work environment.

[2]It is, however, necessary to note that the universe of relevant facts is not nearly as broad as asserted by Juarez-Galvan. The district court specifically excluded some evidence proffered by Juarez-Galvan as either (1) an attempt to create a sham issue of material fact; or (2) speculative, conjectural, or lacking in foundation. Juarez-Galvan does not address the district court's relevant evidentiary rulings, let alone assert those rulings amount to an abuse of discretion. *See Hansen v. PT Bank Negara Indon. (Persero)*, 706 F.3d 1244, 1247 (10th Cir. 2013) ("We review the district court's evidentiary rulings at summary judgment for abuse of discretion."). Thus, any challenge to those rulings is forfeited, *Wilson*, 303 F.3d at 1215, and this court reviews Juarez-Galvan's arguments on appeal only by reference to evidence properly admitted in the district court.

no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Juarez-Galvan "may prove [a] violation of Title VII . . . either by direct evidence of discrimination, or by adhering to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Davis*, 750 F.3d at 1170 (quotation omitted).

Juarez-Galvan argues the district court erred in concluding he failed to present direct evidence of discrimination on the part of UPS. Juarez-Galvan notes the EEOC recognizes linguistic discrimination as a form of national origin discrimination. *See* 29 C.F.R. § 1606.1. He asserts he has presented abundant evidence of employees and managers making fun of his accent and refusing to train him because of his Mexican origin. There are several related problems with this argument. First, Juarez-Galvan's claim of discrimination is limited to a claim he was not promoted to full-time driver because of his national origin. *See supra* n.1. A scrupulous review of the record demonstrates all of the acts identified by Juarez-Galvan as relating to his accent and origin were undertaken by actors not connected in any way to the decision to terminate his qualifying period.[3] Nor is there any evidence the relevant decision-makers were aware of

---

[3]Although it does not appear he so argued before the district court, Juarez-Galvan asserts on appeal that one of these bad actors, Bill Butschle, did participate in the decision to terminate his qualifying period. Butschle was Juarez-Galvan's direct supervisor. The problem for Juarez-Galvan, however, is that the passage he quotes from the decision-maker's deposition disproves this

(continued...)

those comments. That being the case, the alleged statements, though despicable, are irrelevant to the only claim of discrimination validly raised by Juarez-Galvan. *See id.* (noting pretrial order limited Juarez-Galvan's claim of discrimination to a claim of failure-to-promote); *see also Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 817-18 (10th Cir. 1979) (noting this court reviews for abuse of discretion a district court's determination that "certain facts or issues must be excluded" because they do not relate to claims set out in the pretrial order). The district court correctly concluded Juarez-Galvan failed to adduce any direct evidence the decision-maker terminated his qualifying period because of national origin discrimination.

---

[3](...continued)
assertion. Anthony Streit testified he did contact Butschle before informing Juarez-Galvan he was terminating Juarez-Galvan's training period. Streit made absolutely clear, however, that he had already made the decision and merely asked Butschle if he had any objection. Thus, there is simply no support in the record for Juarez-Galvan's assertion Butschle participated in the decision to terminate his qualifying period.

Alternatively, Juarez-Galvan asserts Butschle impeded his training during the qualification period. As noted by the district court, however, the only evidentiary support for this proposition comes in the form of an affidavit submitted by Juarez-Galvan after his deposition. The district court specifically excluded that affidavit on the ground it was utterly inconsistent with Juarez-Galvan's deposition testimony and, thus, constituted an attempt to create a sham issue of fact. As noted above, Juarez-Galvan does not address the district court's decision to exclude the affidavit. *See supra* n.2. In any event, there is nothing in the record to indicate the district court's decision to exclude the affidavit amounts to an abuse of discretion.

Juarez-Galvan also asserts the district court erred in concluding he failed to create a genuine issue of material fact as to whether UPS's proffered legitimate reason for its employment decision (i.e., poor performance by Juarez-Galvan during the qualifying period) was a pretext for discrimination.[4]  According to Juarez-Galvan, UPS's reasons for terminating his qualifying period were pretextual because his driving times were improving and his service errors were not egregious.  There are several problems with this assertion.  This court must generally defer to an employer's decisions on the quality of an employee's work, not the subjective beliefs of the affected employee.  *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996).  Furthermore, UPS need not show its stated reasons were wise, fair, or correct.  *Young v. Dillon Cos.*, 468 F.3d 1243, 1250-51 (10th Cir. 2006).  The test is whether the employer had a good faith belief in its stated nondiscriminatory reason.  *Hardy v. S.F. Phosphates Ltd.*, 185 F.3d 1076,

---

[4]Under the three-part, burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must first establish a prima facie case of discrimination.  *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012).  If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse employment action.  *Id.*  If the employer articulates legitimate reasons for the adverse action, the plaintiff incurs the burden to demonstrate pretext.  *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1227 (10th Cir. 2008).  Because UPS does not contest on appeal the district court's ruling that Juarez-Galvan established a prima facie case, and because UPS's reason for terminating Juarez-Galvan's qualifying period is legitimate and non-discriminatory, the only remaining question is whether Juarez-Galvan has satisfied his burden of creating a material issue of fact as to pretext.

1080 (10th Cir. 1999). That being the case, it is undisputed that not once during his qualification period did Juarez-Galvan complete his route within the time allotted, even when he violated company rules by working through his lunch. Furthermore, the record makes clear that viewed from UPS's perspective, Juarez-Galvan's service errors were serious.[5]

Juarez-Galvan asserts he can demonstrate pretext by comparing himself to K.F.,[6] another potential full-time driver who did not complete the qualification period. He contends his performance during his qualification period was better than K.F.'s performance. Twenty-eight days into K.F.'s qualification period, her supervisor decided not to promote her to a full-time driver position. Juarez-Galvan's supervisor disqualified him after twelve days of unsatisfactory performance. This evidence does not support a claim of pretext because both employees were ultimately treated in the same manner, i.e., their respective managers decided their inadequate job performances warranted terminating the qualification period before the end of thirty days. Confronted with this evidentiary problem, Juarez-Galvan attempts to manufacture an issue of fact about the circumstances of K.F.'s disqualification. Juarez-Galvan states K.F. disqualified herself. The district court concluded Juarez-Galvan's affidavit to this

---

[5]To the extent Juarez-Galvan argues his service errors flow from the poor training he received from Butschle, the argument suffers from the same flaw identified above. *See supra* nn.2-3.

[6]K.F. is a Caucasian female.

-6-

effect was based on inadmissible hearsay and speculation, not personal knowledge. Thus, the district court excluded the evidence. Because Juarez-Galvan did not challenge the district court's evidentiary ruling on appeal, the issue is forfeited and there is no record support for the assertion K.F. disqualified herself.

Juarez-Galvan asserts UPS acted contrary to company policy when it ended his qualification period after twelve days of inadequate performance. He asserts that pursuant to the collective bargaining agreement ("CBA") he was entitled to use the full thirty days to qualify. He further asserts he could qualify if he performed without error during any five consecutive days of the qualifying period. For those reasons set out in the district court's thorough memorandum decision, Juarez-Galvan's arguments lack merit. That is, the CBA cannot reasonably be interpreted to provide every potential full-time driver a full thirty days to attempt to qualify, no matter his performance during the early part of the qualifying period. Nor has Juarez-Galvan provided any foundation for his assertion it was UPS policy to promote any driver who could perform without error for five straight days. Instead, the record makes clear that candidates for promotion must successfully complete the entire qualification period. This certainly does not mean a candidate must be error free for all thirty days. It does, however, mean that, viewed holistically, the candidate performed successfully during the period. With that reasonable understanding of the governing policies,

-7-

it cannot be said UPS was obligated to allow Juarez-Galvan to continue with his qualification attempt when the early part of the attempt was a complete failure.

Finally, Juarez-Galvan argues UPS violated the CBA because it permitted a driver with less seniority the opportunity to qualify as a full-time driver in January of 2009, before he was given the opportunity. This argument is not relevant to the issue set out in the pretrial order because it does not in any way bear on the decision to terminate the qualifying period when Juarez-Galvan eventually attempted to qualify. In any event, this argument ignores UPS's business records and the testimony of Juarez-Galvan's supervisor at the relevant time, both of which establish Juarez-Galvan did not drive in January of 2009 because he was on paid vacation and FMLA leave from January through mid-March of 2009. In addition, because of his job with another employer, Juarez-Galvan chose not to drive during the winter leading up to January of 2009. Juarez-Galvan's affidavit does not controvert these facts, but merely speculates UPS had other reasons. Juarez-Galvan cannot prove pretext or discrimination through his own unsupported, self-serving speculation about UPS's motives. Given UPS's knowledge that Juarez-Galvan was on extended leave, partially unpaid, to deal with a family health issue, it is impossible to conclude its act of offering the qualification opportunity to the next most senior applicant was a part

of a scheme to force Juarez-Galvan to qualify on the most difficult route possible.[7]

The order of the United States District Court for the District of Kansas granting summary judgment to UPS is hereby **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

---

[7]That, of course, assumes the route was, in fact, more difficult than most UPS routes or, more specifically, the route that was available in January. The district court specifically refused to accept that assertion, concluding Juarez-Galvan's conclusory assertions in this regard were utterly lacking in foundation. As is true of all of the other evidentiary rulings of the district court, Juarez-Galvan does not even allude to this ruling, let alone argue it amounts to an abuse of discretion.